981 F.2d 1258
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Charles DICKERSON, Plaintiff-Appellant,
v.
Chase RIVELAND, et al., Defendants-Appellees.
 No. 91-36064.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 4, 1992.*
Decided Dec. 7, 1992.
 
 Before HUG, EUGENE WRIGHT and POOLE, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Washington State prisoner Charles Dickerson appeals pro se the district court's dismissal on summary judgment of a 42 U.S.C. § 1983 civil rights suit against various prison officials. Dickerson also appeals the district court's refusal to appoint counsel for him under 28 U.S.C. § 1915.
 
 
 3
 Dickerson, who is totally blind, alleged that officials of the Washington Corrections Center ("WCC") violated his civil rights when they required him to submit to a urine test for drugs and cited him for an infraction of prison regulations when he failed to provide a urine sample within a prescribed one-hour period. Dickerson seeks removal of the infraction from his prison record and requests that alternative methods of drug testing be provided in the future. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 I.
 
 4
 This court reviews a district court's grant of summary judgment de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. Federal Deposit Ins. Corp. v. O'Melveny & Myers, 969 F.2d 744, 747 (9th Cir.1992).
 
 
 5
 This court reviews a district court's denial of a motion for appointment of counsel under 28 U.S.C. § 1915 for an abuse of discretion. Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir.1986).
 
 II.
 
 6
 Dickerson argues that his privacy rights were violated when a prison officer required him to provide a urine sample in the officer's presence and when the officer denied Dickerson's request to take an alternate form of drug test.
 
 
 7
 This court has recognized that prisoners have a limited right to bodily privacy. Michenfelder v. Sumner, 860 F.2d 328, 333 (9th Cir.1988). A penal institution may impinge upon that right where its action is " 'reasonably related to legitimate penological interests.' " Id. at 334 (quoting Turner v. Safley, 482 U.S. 78 (1987)).
 
 
 8
 WCC policy mandates random urinalysis drug testing of its prisoners. The policy requires prison inmates to provide a urine sample on demand, under the supervision of a same-sex officer. Inmates are taken to a secure and private area for this purpose. If the inmate refuses to provide a sample, the officer informs the inmate that refusal to cooperate is an infraction of Washington Administrative Code 137-28-030, No. 607 and is punishable in the same manner as a positive drug test result. The inmate is given one hour to produce a sample. If the inmate refuses or is unable to do so, he is cited with the infraction. The policy does not provide for drug tests other than urinalysis.
 
 
 9
 Random drug testing is reasonably related to the goal of reducing inmate drug use, which is obviously a legitimate penological interest. See Bell v. Wolfish, 441 U.S. 520, 559-60 (1979) (objective of preventing drugs and other contraband from entering prison is sufficient to justify infringement of constitutional rights). The WCC policy of supervising an inmate while he provides a urine sample is likewise related to the legitimate objectives of preserving the integrity of a sample and insuring that it belongs to the inmate.
 
 
 10
 We find no reason, moreover, why WCC should be required to provide inmates with drug tests other than urinalysis. The Supreme Court has stated that prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell, 441 U.S. at 547. In our view, WCC's sole reliance on urinalysis to conduct its drug testing is reasonable. Alternatives such as blood testing and catheterization do exist, but are even more intrusive and, according to WCC, more expensive. Summary judgment on these issues was therefore appropriate.
 
 III.
 
 11
 Dickerson argues that his due process rights were also violated when he was disciplined for not providing a urine sample pursuant to prison regulations.
 
 
 12
 Due process in prison disciplinary hearings is satisfied if there is "some evidence" to support the findings of the disciplinary body. Bostic v. Carlson, 884 F.2d 1267, 1269-70 (9th Cir.1989). The relevant inquiry is " 'whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.' " Id. at 1270 (quoting Superintendent, Mass. Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 455-56 (1985)).
 
 
 13
 Dickerson received a prison disciplinary hearing regarding the infraction on August 3, 1988. He did not dispute his failure to provide a urine sample, but argued instead that he was unable to produce a sample because of psychological stress brought on by the presence of a prison officer. The prison superintendent rejected this contention and found Dickerson guilty of a disciplinary infraction.
 
 
 14
 We conclude that due process was satisfied in this case. Though Dickerson's alleged inability to urinate would surely have made it difficult for him to comply with the regulation, he was afforded the opportunity to present this factual contention during a disciplinary hearing. The undisputed fact that Dickerson did not produce a urine sample provides "some evidence" to sustain the infraction. See Bostic, 884 F.2d at 1269-70. Summary judgment on this issue was therefore appropriate.
 
 IV.
 
 15
 Dickerson argues that the district court erred by failing to appoint counsel for him pursuant to 28 U.S.C. § 1915.
 
 
 16
 Under that statute, the district court is authorized to appoint counsel to represent indigent civil litigants. Franklin v. Murphy, 745 F.2d 1221, 1236 (9th Cir.1984). A court, however, may appoint counsel only in "exceptional circumstances." Id. An evaluation of whether those circumstances exist must consider both "the likelihood of success on the merits [and] the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir.1986) (quoting Weygandt v. Look, 718 F.2d 952, 954 (9th Cir.1984)).
 
 
 17
 Even though Dickerson is blind and has had to rely on others to prepare documents, he has demonstrated a satisfactory ability to articulate his claims. None of these claims is complex. The district court, therefore, did not abuse its discretion by refusing to appoint counsel to represent Dickerson in this matter.
 
 V.
 
 18
 We have considered all of Dickerson's contentions. The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3