996 F.2d 1227
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Leon SANDERS, Plaintiff-Appellant,
v.
HUGHES AIRCRAFT COMPANY; Connie Gibson; Lou Pegan; Steve
Coen; Electronic & Space Technicians, Defendants-Appellees.
 No. 91-56424.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 8, 1993.*
Decided June 16, 1993.
 
 Before: CANBY, FERNANDEZ, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Leon Sanders, a black employee of Hughes Aircraft, appeals pro se the district court's grant of summary judgment in favor of the defendant employer for claims raised under Title VII and 42 U.S.C. § 1981, and its summary judgment grant in favor of the defendant union for claims raised under section 301 of the Labor Management Relations Act ("LMRA"). We affirm.
 
 I.
 FACTS AND PRIOR PROCEEDINGS
 
 3
 Leon Sanders, a black union employee, was hired by Hughes Aircraft Co. ("Hughes") on July 7, 1983. He began work as a Drill Operator Machined Parts B. Sanders maintains that he verbally accepted the position of a Drill Operator Machined Parts A and that, before he started work and without his knowledge, Hughes "downgraded" his position to that of Drill Operator Machined Parts B. During collective bargaining negotiations in 1985, Hughes and the Union agreed to consolidate several machinist job classifications--the position of Drill Operator Machined Parts B was consolidated into that of Production Machine Operator.
 
 
 4
 Sanders eventually sued Hughes, his union, Electronic and Space Technicians, Local 1553, AFL-CIO ("Union"), and the Equal Employment Opportunity Commission ("EEOC") for racially motivated failure to promote, denial of overtime, and unfair reprimands. The Ninth Circuit affirmed the district court's grant of summary judgment in favor of the defendants.[1]
 
 
 5
 On January 7, 1991, Sanders sued Hughes and the Union again, alleging racially motivated and retaliatory failure to promote, denial of overtime, and temporary layoffs. Sanders based these claims on the following facts: In November 1988, Hughes promoted another employee, Mr. Duane Nambu, to the position of Numerical Control ("N/C") Machine Parts Operator. In March 1991, Sanders and a fellow Production Machine Operator were temporarily laid off for a few weeks. And last, beginning in January 1991, workers on the first shift were assigned more overtime than was Sanders, who worked on the third shift.
 
 
 6
 After filing his complaint, Sanders filed an EEOC charge against Hughes over the March 1991 layoff and the allocation of overtime. He also filed four new grievances with the Union, which it decided not to pursue. Sanders then filed an amended complaint to add new claims. In its August 15, 1991 Order, the district court clarified the claims on which Sanders could proceed:
 
 
 7
 1. A Title VII race discrimination claim against Hughes for failure to promote, denial of overtime, and the March 1991 temporary layoff.
 
 
 8
 2. A Title VII claim against Hughes for racial harassment.
 
 
 9
 3. A 42 U.S.C. § 1981 race discrimination claim against Hughes based on the Title VII allegations.
 
 
 10
 4. LMRA Section 301 claims against the Union for failing to arbitrate the four new grievances and allegedly misleading the plaintiff about his starting labor grade.
 
 
 11
 On October 21, 1991, the district court granted summary judgment for the defendants on all the claims, and Sanders filed a timely notice of appeal.
 
 II.
 STANDARD OF REVIEW AND JURISDICTION
 
 12
 The district court had jurisdiction under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f), under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. We have jurisdiction under 28 U.S.C. § 1291. A grant of summary judgment is reviewed de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Federal Deposit Ins. Corp. v. O'Melveny & Myers, 969 F.2d 744, 747 (9th Cir.1992).
 
 III.
 DISCUSSION
 
 13
 1. The Title VII claims regarding the promotion of Mr. Nambu, temporary layoffs, and denial of overtime.
 
 
 14
 Sanders did not prove a Title VII claim on the promotion issue. Sanders claims that he was denied a promotion because of his race, and that, instead of promoting him, Hughes promoted a Mr. Nambu to the position of Numerical Control (N/C) Machine Parts Operator. However, Sanders failed to establish a prima facie case of race discrimination, which requires that a plaintiff prove that he applied for a position for which he was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Sanders never applied for the position of N/C Machine Parts Operator--a job which is not in the promotional path for Production Machine Operators--and he admitted that he had no experience or training on N/C machines as was required. Mr. Nambu both applied for the job and had experience working on N/C machines.
 
 
 15
 Sanders also failed to make out a Title VII claim on the layoff issue. The collective bargaining agreement requires the company to lay off the least senior employees first. Sanders and a fellow employee were temporarily laid off because they were the two least senior employees in the Production Machine Operator job classification.
 
 
 16
 Hughes did not violate Title VII in its allocation of overtime. The race-neutral collective bargaining agreement requires that Hughes apportion overtime "in an equitable and fair manner ... on the Shift, where the overtime is necessary." Workers on the first shift were assigned the overtime--this is no violation of the collective bargaining agreement. On his shift--the third shift--Sanders worked about half of the available overtime hours; a black co-worker, Odell Clayton, worked the other half. There was no racially based favoritism in the allocation of overtime.
 
 
 17
 2. Title VII claim for racial harassment.
 
 
 18
 The Title VII claim for racial harassment is based on eight union grievances Sanders filed for "harassment and false charges of poor work." In order to survive summary judgment, Sanders must show that the alleged racial harassment is "sufficiently severe and pervasive to alter working conditions." Woods v. Graphic Communications, 925 F.2d 1195, 1201 (9th Cir.1991). He has shown neither that the alleged conduct is "sufficiently severe and pervasive," nor, indeed, that it was racially motivated.
 
 
 19
 Sanders filed three grievances responding to his supervisor's charges that he talked too much on the job. Another three grievances challenged reprimands for poor work. The seventh grievance responded to a reprimand from an outside auditor, not a Hughes employee. Sanders filed his eighth grievance because his personnel file did not contain certain documents such as his initial EEOC complaint.
 
 
 20
 Sanders himself attributed this supposed harassment, not to his race, but to the fact that he challenged his initial work grade. In addition, the supervisor who allegedly harassed Sanders did not single him out--he reprimanded seven co-workers of various races seventeen times over the same period. Lastly, these reprimands were not the kind of severe and pervasive conduct that qualifies as harassment. The district court did not err in granting summary judgment to the defendants on this claim.
 
 
 21
 3. 42 U.S.C. § 1981 claim.
 
 
 22
 Section 1981 states that "all persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens...." The term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).
 
 
 23
 While racially based failure to promote and discharge are actionable under 42 U.S.C. § 1981, there is no evidence that Sanders was not promoted because of his race.[2] The temporary layoff in March 1991 also was not racially motivated.
 
 
 24
 4. LMRA section 301 claim for failure to pursue the four new grievances the plaintiff submitted after filing his initial complaint.
 
 
 25
 To prevail on a section 301 claim against either the employer or the union, Sanders must show both that the union breached its duty of fair representation and that the employer breached the collective bargaining agreement. Hines v. Anchor Motor Freight, 424 U.S. 554, 570-71 (1976). He has shown neither.
 
 
 26
 The union did not breach its duty of fair representation by failing to arbitrate Sanders's four new grievances. "A union breaches its duty of fair representation only when its conduct toward a member of the collective bargaining unit is 'arbitrary, discriminatory, or in bad faith.' " Peterson v. Kennedy, 771 F.2d 1244, 1253 (9th Cir.1985) (quoting Vaca v. Sipes, 386 U.S. 171, 177 (1967)). In deciding whether the union breached its duty of fair representation, we must give substantial deference to the union's judgment in the matter. Peterson, 771 F.2d at 1253.
 
 
 27
 Sanders alleged in his four new grievances that: 1) he had been working above his classification, 2) Hughes improperly consolidated his job classification, Drill Operator Machined Parts B, into another classification, Production Machine Operator, 3) he was denied overtime, 4) Hughes improperly laid him off temporarily in March 1991, and 5) Hughes harassed him and disregarded medical restrictions imposed by his doctor.
 
 
 28
 The Union's Executive Board found that only the first allegation--that Sanders had been working above his classification--was arguably meritorious; however, since Hughes had already upgraded Sanders before the Executive Board met, the union decided not to arbitrate this grievance. This decision can hardly be termed "arbitrary, discriminatory, or in bad faith" as is required for a breach of the duty of fair representation.
 
 
 29
 Furthermore, the Union did not breach its duty of fair representation when it decided not to arbitrate the other grievances. The Union found that Hughes did not violate the collective bargaining agreement when it consolidated the Drill Operator Machined Parts B position into the Production Machine Operator classification. Last, the union did not find credible evidence of harassment or disregard for medical restrictions.
 
 
 30
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Sanders v. Hughes Aircraft, No. 87-5925 (9th Cir. March 17, 1988)
 
 
 [2]
 Claims against either Hughes or the Union based on the alleged deception about Sanders's initial starting grade are barred by res judicata. Sanders conceded in deposition that the initial "downgrading" of his job was one of the issues in his first lawsuit. In addition, res judicata precludes all claims that could have been raised in an earlier lawsuit. Palomar Mobilehome Park Ass'n v. City of San Marcos, No. 91-56165, slip op. 2931, 2935-36 (9th Cir. March 30, 1993)