**William Michael JONES, Plaintiff–Appellant,**

v.

**UNION PACIFIC RAILROAD COMPANY, United Transportation Union, Defendants–Appellees.**

**No. 91–35075.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1992.

Decided July 1, 1992.

---

Michael L. Rosenbaum and E.J. Simmons, Portland, Or., for plaintiff-appellant.

Kathleen J. Ford, Omaha, Neb., Clinton J. Miller, III, and Kevin C. Broder, Asst. General Counsel, United Transp. Union, Cleveland, Ohio, for defendants-appellees.

Before: WALLACE, Chief Circuit Judge, GOODWIN, Circuit Judge, and CROCKER *, District Judge.

---

* Honorable M.D. Crocker, Senior United States District Judge for the Eastern District of California, sitting by designation.

GOODWIN, Circuit Judge:

William Michael Jones appeals a summary judgment in favor of United Transportation Union (the "Union") and the Union Pacific Railroad Company (the "Company"). The district court rejected Jones' claims of breach of the duty of fair representation against the Union, breach of contract against the Company, and equitable estoppel against both. We affirm in part, reverse in part, and remand.

Jones began working for the Company in 1973, first as a trainman and later as a conductor. Jones is a member of the Union. A collective bargaining agreement (the "CBA"), negotiated by the Union, exists between the Company and its employees.

In 1987, the parties to the CBA added a provision allowing Company employees to take a two-year leave of absence from the Company to work for AmTrak. Employees could return any time within the two years. However, for employees whose leaves of absence extended beyond two years, the provision set out certain conditions for returning to the Company. On April 29, 1987, Jones took a leave of absence from the Company to work for AmTrak.

Jones' leave of absence extended beyond two years. Before the expiration of two years, however, Jones had understood through conversations with officials of the Company that extending his leave of absence would not cause problems.

On June 12, 1989, the Company's dispatching director, C.W. Dent, sent a letter to Company employees who had overstayed their leaves of absence and were still at AmTrak. The Company had been experiencing a manpower shortage and through the letter Dent asked the employees to return and declared that the Company would not enforce the conditions for late return set forth in the CBA. This offer would expire on July 12, 1989. The Union never objected to Dent's letter or indicated that it would challenge the return of Company employees.

Through Company officials, Jones understood that the Company was not going to enforce the July 12 deadline of Dent's letter. Indeed, when, on July 26, Jones indicated his desire to return to the Company, the Company informed him that he could return if he took a rules test and a physical examination, resigned from AmTrak, and notified the Union that he was returning. On the same day, Jones left a message on the answering machine of Lavonne Nelson, the General Chairman of the Union. In the message, Jones indicated that he was returning to the Company. Jones subsequently took the required tests and on July 31, having heard nothing from the Union, Jones resigned from AmTrak and returned to the Company. The record reveals no Company employees, other than Jones, who returned to the Company after a greater than two-year leave of absence with AmTrak.

Jones worked for the Company until August 9. On that day, Jones reported to work and learned that the Company had prevented him from "marking up" for work. Jones subsequently learned that the Company had taken its action at the request of the Union. On August 10, Jones called General Chairman Nelson. In that conversation, Nelson called Jones a "puke" and informed him that the Union would not represent him. Nelson refused to help Jones obtain a copy of the CBA and advised him to try to return to AmTrak.

At this point, Jones was unable to return to AmTrak or to continue with the Company because the Company had released him. In fact, Jones was even unable to collect the job security benefits he had accumulated over the years with the Company because he was deemed to have "resigned" from the Company.

Jones chose not to invoke the Union's appeal procedures for challenging Nelson's decision that the Union would not help him. Instead, Jones brought this action in federal district court against the Union and the Company. In his suit against the union, Jones charged breach of duty of fair representation. Jones also sought recovery under a theory of equitable estoppel.

Against the Company, Jones claimed breach of contract and equitable estoppel. The district court granted summary judgment to both defendants on all of Jones' claims. Jones timely appealed.

■ Because this is an appeal from a summary judgment, this court will review de novo the decision of the district court. *International Ass'n of Machinists v. Aloha Airlines, Inc.*, 790 F.2d 727, 730 (9th Cir.), *cert. denied*, 479 U.S. 931, 107 S.Ct. 400, 93 L.Ed.2d 354 (1986). In considering the summary judgment motion, this court reviews the record in the light most favorable to Jones to determine whether there exist genuine issues of material fact regarding his claims. *Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321, 324 (9th Cir. 1982).

## I. Claims Against the Union

### A. Unfair Representation
#### 1. The Merits

The Union does not dispute that Jones is a member or that it owed Jones a duty of fair representation. Instead, the Union argues that, as a matter of law, it did not breach its duty toward Jones.

The usual breach of the duty of fair representation case arises from actions taken by a company against an employee who is a union member. The member then brings his grievance to the attention of his union and requests that the union pursue the grievance against the company. This is the situation envisaged by the Railway Labor Act, 45 U.S.C. § 181—the act which deals with the relationship between carriers and their employees and out of which Jones' claim arises. *See Bautista v. Pan American World Airlines, Inc.*, 828 F.2d 546, 549 (9th Cir.1987). Indeed, the vast majority of the more than twenty cases cited by the Union involve this situation. The present case is different.

Here, the Union, and not the Company, initiated the actions which harmed the interests of a Union member. Indeed, the Company had appeared to act in the interests of the Union member and the Union compelled the Company to reverse its ac-

tions and leave the member stranded between two jobs. None of the fair representation cases which the Union cites is apposite to this case.

A union breaches the duty of fair representation when its conduct toward a member is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). This duty is narrowly construed by the courts, however, so that unions may act freely in what they perceive are the best interests of their members generally. *Banks v. Bethlehem Steel Corp.*, 870 F.2d 1438, 1441 (9th Cir.1989).

In attempting to justify its actions against one of its own members, the Union points only to the seniority interest of its membership which was threatened by Jones' return. The Union does not and can not assert that, in returning, Jones displaced any other Union members from employment with the Company. Indeed, the reason the Company invited Jones back from AmTrak was that the Company was suffering from a manpower shortage. The Union's contention that Jones' return harmed the seniority interests of the other Union members does not serve as a valid justification for its actions.

When one Union member enjoys greater seniority than another member, the interests of the second member conflict with those of the first. That sort of conflict may be a fit subject for the Union's grievance machinery, but it is no excuse for the Union to refuse to represent each of its members fairly according to the terms of the CBA. The Union could have handled any seniority problems posed by Jones' return without first seeking to prevent Jones from working or refusing to represent him.

The Union's contention that its actions are justifiable as enforcement of the CBA is, not necessarily compelling at the summary judgment stage. The Dent letter's offer to excuse late returns was made on June 12. The Union did not object to the late return of employees until early August when it objected to Jones' return. At no time in the intervening two months did the Union indicate that it opposed the Company's plan to bring back late-returning employees. While Jones may have been the only former employee attempting a late return to the Company, that fact does not relieve the Union of its duty of fair representation.

A trier of fact might expect that a Union which intended to force the removal of late returning members would inform those members of its intention before the members resigned from their current positions. A trier of fact might find it not plausible that a Union, which owed a duty of fair representation to its members, but which was concerned about late returning employees infringing the seniority interests of other members, would remain silent for almost two months during which the Company was attempting to bring back late returning employees.

In granting the Union summary judgment, the district court accepted the Union's explanation for its actions. In discussing how it reached this conclusion, the court assumed, in its analysis, that Dent's letter was part of the CBA. Indeed, with this assumption, the Union's actions against Jones might be considered defensible by a trier of fact. Jones was the only employee to return after the Dent letter's deadline. Moreover, the time difference between that deadline, July 12, and the Union's challenge of Jones, is only a matter of a few weeks.

The problem with the district court's assumption is that it is contrary to the undisputed facts and it virtually assumes the conclusion. Even the Union refers to Dent's letter as "unilateral" action taken by the Company—the letter was not and could not have been part of the CBA. Viewing the facts as they actually exist, the Union's challenge of Jones after it had remained silent over the Dent letter raises an issue of material fact.

In addition, these circumstances raise a genuine issue of fact as to its good faith. These circumstances are aided by Nelson's antagonistic treatment of Jones and his reference to Jones as a "puke". If the Union's explanation does not survive a

trial, then the Union's actions against Jones are without apparent justification. In that case, the actions would be arbitrary and discriminatory. Accordingly, Jones has raised a genuine issue of fact as to whether the Union breached its duty of fair representation. The district court erred in granting summary judgment to the Union on this issue.

### 2. Failure to Exhaust Union Remedies

In bringing suit against the Union instead of appealing Nelson's decision according to Union procedures, Jones failed to exhaust his union remedies. Jones argues that the Union did not provide for an appeal in his case. However, Article 75, paragraph I, section (d) of the Union charter states: "A ... member of a local may appeal from an action or decision of a General Chairperson to the General Committee of Adjustment, provided the appeal is filed within ninety (90) days from the date the action of decision occurred." Jones could have appealed Nelson's decision under Article 75.

■ Normally, a union member who has failed to exhaust his internal union remedies faces dismissal of his suit against the union. *Clayton v. Automobile Workers*, 451 U.S. 679, 685–686, 101 S.Ct. 2088, 2093, 68 L.Ed.2d 538 (1981). However, the district court has discretion to excuse a failure to exhaust union remedies if exhaustion would have been a futile effort. *Id.* at 689, 101 S.Ct. at 2095; *Zuniga v. United Can Co.*, 812 F.2d 443, 449 (9th Cir.1987). One of the tests for futility asks "whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim." *Clayton*, 451 U.S. at 689, 101 S.Ct. at 2095.

In its decision, the district court expressly declined to decide the futility issue because it granted the Union summary judgment on the merits. Because summary judgment on the merits was inappropriate and because the futility decision is a matter of discretion for the district court, we remand for a determination of whether the futility exception applies. If the court so determines, then Jones should be allowed to bring his fair representation claim to trial.

### B. Equitable Estoppel

■ Jones' second claim against the Union is under the doctrine of equitable estoppel. To make out a claim for equitable estoppel, Jones must prove four elements: (1) the Union knew the facts surrounding Jones' rehire; (2) the Union intended Jones to act on the Union's conduct or the Union acted in such a way that Jones had a right to believe it so intended; (3) Jones was ignorant of the true facts; and (4) Jones relied on the Union's conduct to Jones' injury. *See Bob's Big Boy Family Restaurants v. NLRB*, 625 F.2d 850, 854 (9th Cir.1980).

■ The district court based its rejection of Jones' claim on an erroneous analysis. In rejecting Jones' claim, the court found that Jones "[had] not shown that [the Union] intended Jones to act on its conduct." The court based this finding on its calculation of a four day gap between the time Jones left his July 26 message with Nelson, and the time that the Union challenged Jones' return. This calculation is belied by the record. There is no indication that the Union objected to the Company's proposed rehire of Jones on July 30 or 31. Certainly, Jones was unaware of any Union objection until he was prevented from "marking up" on August 9. The record indicates that the Union persuaded the Company to discharge Jones shortly before that, but after Jones had returned to the Company.

For equitable estoppel purposes, the relevant dates are July 26, the day Jones notified the Union that he was returning, and July 31, the day Jones resigned from AmTrak and returned to the Company. The Union's objections came after July 31.

Given that unions owe their members a duty of fair representation, a trier of fact could find it was reasonable for Jones to assume that his own union would have notified him of its intention to seek his discharge from the Company should he return *before* he committed himself and re-

signed from AmTrak. Thus, there is a genuine issue as to whether the Union's failure to object to Jones' return before July 31 constituted conduct which reasonably led Jones to believe that it would not object.

Similarly, genuine issues exist as to factors (1), (3), and (4). The Union knew of Jones' plan to return to the Company through Jones' message of July 26. Jones was unaware that the Union would object to his return. Finally, it is reasonable to conclude that Jones would have acted differently had he known his own union would bar his return to the Company.

The district court erred in granting summary judgment to the Union on Jones' equitable estoppel claim.

## II. Claims Against the Company

### A. Breach of Contract

Jones may sue the Company for breach of contract only if his unfair representation claim against the Union is triable. *Bautista,* 828 F.2d at 551–52. Because the district court rejected Jones' claim against the Union, it rejected Jones' breach of contract claim against the Company without addressing the merits of that claim. On appeal, none of parties addresses the merits of that claim. If, on remand, the district court finds that the futility exception applies to Jones' failure to exhaust Union remedies, then the court should rule on the merits of the Company's summary judgment motion concerning the breach of contract claim. Otherwise, rejection of the contract claim would be appropriate.

### B. Equitable Estoppel

The Railway Labor Act does not bar suits by employees against their employers under the doctrine of equitable estoppel. *Hass v. Darigold Dairy Products Co.,* 751 F.2d 1096, 1099 (9th Cir.1985). Jones has not alleged that, at the time the Company made its offer to Jones to return, the Company was aware that the Union would challenge the return. *See Bob's Big Boy Family Restaurants,* 625 F.2d at 854. Accordingly, Jones cannot pursue a claim of equitable estoppel against the Company.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.