990 F.2d 1265
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Gloria VELLALOS; Matio Vellalos; Vernon Raymond Vellalos;
Countrywide Funding Corp. Defendants-Appellees
v.
AKAMAI ELECTRICAL SERVICES, INC. Third-party-defendant-Appellee
 No. 92-15491.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 13, 1993.
Decided March 19, 1993.
 
 Before ALDISERT,* GOODWIN and FLETCHER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 We are faced with an appeal by the government from two discrete orders of the district court: one dated January 10, 1992, the other, January 15, 1992. We do not have jurisdiction over the January 10 order in which the court granted the defendants' motion to dismiss the government's claim based on Hawaii's Uniform Fraudulent Transfer Act. We have jurisdiction to reach the merits of the appeal from the January 15 order in which the district court granted summary judgment and decree of foreclosure in favor of Akamai Electrical Services, Inc., a mortgagor.
 
 
 3
 The district court had jurisdiction over all claims under 28 U.S.C. §§ 1340 and 1345. We have jurisdiction over the January 15 order pursuant to an express direction for the entry of judgment, Rule 54(b), Federal Rules of Civil Procedure. Appeal was timely filed under Rule 4, Federal Rules of Appellate Procedure.
 
 
 4
 A grant of summary judgment is reviewed de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Federal Deposit Ins. Corp. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992).
 
 I.
 
 5
 Taxpayers Matio Vellalos and Gloria Vellalos, husband and wife, filed joint federal income tax returns for the tax years 1982 through 1985. During those years, Gloria Vellalos allegedly embezzled funds from her various employers.
 
 
 6
 After losing their home to foreclosure, the Vellaloses and their family moved into a house in Mililani, Hawaii purchased on February 26, 1986 by their son, Vernon Vellalos (hereinafter the "Mililani property"). The purchase was financed by a mortgage and note in the amount of $140,130, executed and delivered to Stanwell Mortgage by Vernon Vellalos. This mortgage was later purchased by Countrywide Funding Corp. As a result of Vernon Vellalos' failure to make timely payments on the mortgage, Countrywide declared the entire indebtedness secured by the mortgage immediately due and payable on March 1, 1991 in the amount of $145,389.
 
 
 7
 On June 26, 1986, the IRS made income tax assessments against the taxpayers for the years 1982 through 1985 in the total amount of $778,169 for the unreported income allegedly embezzled by Gloria Vellalos. On January 19, 1990, a notice of federal tax lien was filed against Vernon Vellalos as the agent or nominee of the taxpayers. This notice of tax lien attached only to the Mililani property and set forth the income tax assessments made against taxpayers for tax years 1982 through 1985.
 
 
 8
 One of Gloria's employers, Akamai Electrical, from whom she allegedly embezzled funds while working as their bookkeeper, demanded restitution upon learning of her activities. In response, on April 17, 1991, Vernon and Gloria Vellalos executed a note in favor of Akamai in the amount of $127,000 secured by a second mortgage on the Mililani property given by Vernon. Vernon and Gloria also defaulted on this note and Akamai Electrical declared the entire indebtedness immediately due and payable.
 
 
 9
 On February 1, 1991, the United States brought this suit to reduce the tax assessments to judgment and to foreclose its tax liens against the Mililani property. Subsequently, Countrywide and Akamai became parties to the government's action, both claiming a secured interest in the Mililani property. In its complaint, the government requested, among other things, that the court determine that the taxpayers' son, Vernon, was holding the Mililani property as the nominee or agent of taxpayers or, alternatively, that taxpayers' transfer of the property to their son was fraudulent.
 
 
 10
 On January 10, 1992, the district court granted the Vellaloses' motion to dismiss the government's claim against the Mililani property based on Hawaii's Uniform Fraudulent Transfer Act. The court, however, failed to address, or expressly dismiss, the government's nominee claim.[1]
 
 
 11
 On January 15, 1992, the district court granted summary judgment and decree of foreclosure in favor of Countrywide and Akamai. Although the government admitted that Countrywide had a senior and superior interest in the Mililani property, it claimed an interest superior to that of Akamai. In its order, the court failed to specifically address the validity or priority of the government's lien against the Mililani property. The court held merely that the mortgage of Countrywide had priority over the Akamai mortgage and the liens, if any, claimed by the United States. E.R. at 150. Pursuant to the court's order, the Mililani property was sold on July 7, 1992 for $305,000. The proceeds, after payment to Countrywide in satisfaction of its lien, have been deposited into the registry of the court.
 
 II.
 
 12
 In the order dated January 10, 1992, the district court granted the Vellaloses' motion to dismiss the government's claim against the Mililani property based on Hawaii's Uniform Fraudulent Transfer Act. The court left unresolved the issue of whether the government had a valid claim against the property on the theory that Vernon was the nominee or agent of the Vellaloses. This order was not expressly determined to be a final judgment pursuant to Rule 54(b), Federal Rules of Civil Procedure. The second order dated January 15, 1992 was expressly determined to be final by the district court under Rule 54(b).
 
 
 13
 Where the lower court grants Rule 54(b) certification as to some claims but not others, appellate jurisdiction extends only to those claims covered by the Rule 54(b) certification. See Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd, 880 F.2d 176, 190 n. 17 (9th Cir.1989), cert. denied, 493 U.S. 1058 (1990). The certification in this instance refers only to the grant of summary judgment and foreclosure orders in favor of Countrywide and Akamai. Because the district court failed to adjudicate all of the United States' claims regarding the Mililani property, its dismissal of the fraudulent conveyance claim is not a final order under 28 U.S.C. § 1291. Thus, this court does not have jurisdiction over the fraudulent conveyance claim delivered in the January 10 order.
 
 III.
 
 14
 On appeal of the January 15 order, the government contends that the district court erred in granting summary judgment and a foreclosure order in favor of Akamai. According to the government, implicit in the court's order granting summary judgment and foreclosure in favor of Akamai is the conclusion that either the United States has no interest in the property under its two claims or that whatever interest it has is inferior to that of Akamai.
 
 
 15
 In the foreclosure order, the district court stated the following:
 
 
 16
 COUNTRYWIDE and AKAMAI are entitled to have their respective mortgages foreclosed, the mortgaged property sold in the manner provided by law, and the sale proceeds applied to the amounts owed to each of them on the respective loan amounts.
 
 
 17
 E.R. at 150. In the government's view, if the sales proceeds are applied in the manner directed by the court, then only limited proceeds, if any, would remain to satisfy its tax claims.
 
 
 18
 We disagree with the government's view. It reads too much into the order. The foreclosure order makes no ruling on any claim asserted by or against the United States, nor does it say anything about the priority of Akamai's mortgage vis-a-vis the government's alleged tax lien.
 
 
 19
 The court does provide, as the government asserts, for the property to be sold and the amounts applied to the loans of Countrywide and Akamai, but it also provides for the possibility of the government's claim being superior to Akamai's. For instance, the foreclosure order provides that:
 
 
 20
 The MORTGAGE of COUNTRYWIDE has priority over the AKAMAI MORTGAGE and the liens, if any, claimed by the UNITED STATES OF AMERICA as to the mortgaged property.
 
 
 21
 E.R. at 150. Furthermore, the district court specifically directs the commissioner of the court to "disburse the sale and rent proceeds according to further orders of this court." Id. at 153.
 
 
 22
 Although the district court's order does establish Akamai's valid interest in the Mililani property and its right to proceeds from the sale of that property, it does not establish that Akamai's right supersedes or is superior to any rights of the United States. The only priority established by the court is that Countrywide holds a superior claim to both Akamai and the government. The merits of the government's nominee claim were not addressed or affected by the district court's foreclosure order in favor of Akamai and, therefore, we will not address them here.
 
 
 23
 As to the January 15 order, Akamai clearly has a valid lien and is entitled to foreclosure. Under the circumstances, however, Akamai may not collect on its lien until the district court determines the validity and priority of the government's alleged lien.
 
 IV.
 
 24
 Because the district court failed to address all of the government's claims in its January 10 order, this court does not have jurisdiction to address the government's fraudulent conveyance claim. The parties must return to the district court to resolve the issue of whether Vernon Vellalos is a mere nominee or agent of the taxpayers and whether the government has a valid lien. If it finds a valid lien, the district court must then determine the priority between Akamai's and the government's liens. Only then will both issues be ripe for appeal.
 
 
 25
 The remaining assets from the foreclosure sale of the Mililani property will remain in the court's registry until the government's claims have been resolved and any priorities determined.
 
 
 26
 We have considered all of the government's contentions. The judgment of the district court entered January 15, 1992 is AFFIRMED. The appeal from the January 10, 1992 order is DISMISSED.
 
 
 
 *
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In an order filed subsequent to the filing of this appeal, the district court mistakenly stated in an obiter dictum that it had decided the government's nominee claim. United States v. Vellalos, No. CV-91-00068-HMF (D.Haw. Oct. 13, 1992) ("Since the court has already ruled that the United States' lien is invalid, the court would be inclined to also rule that any claim on the Property, including Akamai's lien, is superior to the invalid claim of the United States.")