Paul VAN BLARICOM,
Plaintiff–Appellant,

v.

BURLINGTON NORTHERN RAILROAD
COMPANY, a corporation; United
States of America; Interstate Commerce
Commission, Defendants–Appellees.

No. 91-36026.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1993.

Decided March 2, 1994.

Owen J. Wales, Seattle, Washington, for the plaintiff-appellant.

Kurt W. Kroschel, Kroschel & Gibson, Bellevue, Washington, for defendant-appellee Burlington Northern Railroad Company.

Virginia Strasser, Interstate Commerce Commission, Washington, D.C., for respondents Interstate Commerce Commission and United States of America.

Before: BRUNETTI, LEAVY, and TROTT, Circuit Judges.

BRUNETTI, Circuit Judge:

■ The issue presented in this case is whether the Interstate Commerce Commission ("ICC") has the authority to enforce labor protective conditions adopted in compliance with the Interstate Commerce Act extraterritorially on behalf of a Canadian citizen, working in Canada for an American rail carrier. We hold that it does not.

## I. Facts and Proceedings

Paul Van Blaricom, a Canadian citizen, was an employee of Northern Pacific Railway Co., which merged with several U.S. and Canadian railroads to form Burlington Northern Railroad Co. ("Burlington") in 1970. The ICC approved the merger agreement, which extended the collective bargaining agreement protections the railroads had negotiated for union employees to non-union employees as required by the Interstate Commerce Act, 49 U.S.C. § 11347. These labor protective conditions included guaranteed compensation for the rest of an employee's working life upon any reduction in force. *Great N. Pac.—Merger—Great N. Ry.*, 331 I.C.C. 228 (1967) (*"Northern Lines "*), *aff'd, U.S. v. U.S.*, 296 F.Supp. 853 (D.D.C.1968), *aff'd*, 396 U.S. 491, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970).

After the merger, Van Blaricom was employed by Burlington as an "exempt" or nonunion clerk in Canada until his position was abolished by Burlington in 1988.

Van Blaricom brought this action in district court for breach of the labor protective conditions of the merger agreement established in *Northern Lines* and approved by the ICC. The district court stayed the action pending determination by the ICC of several issues including whether the labor protective conditions adopted for non-union employees in the *Northern Lines* merger agreement applied to Van Blaricom, a Canadian citizen working in Canada.[1] The ICC

concluded that it did not have jurisdiction and lacked the authority to enforce the employment protections on Van Blaricom's behalf. *Great N. Pac. & Burlington Lines— Merger—Great N. Ry. In the Matter of Paul E. Van Blaricom*, 6 I.C.C.2d 919 (1990). Van Blaricom appealed the ICC's decision to the district court, where the decision was affirmed on summary judgment.

## II. Discussion

A grant of summary judgment is reviewed de novo, applying the same standards used by the district court. *Jones v. Union Pac. R.R.*, 968 F.2d 937, 940 (9th Cir.1992).

■ Pursuant to the Administrative Procedure Act, agency decisions must be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In reviewing an agency's interpretation of a statute, the court must reject those constructions that are contrary to clear congressional intent or frustrate the policy that Congress sought to implement. *Chevron U.S.A. Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984). If a statute is silent or ambiguous on a particular point, however, the court defers to the agency's interpretation. *Id.* at 843, 104 S.Ct. at 2781.

■ Congress has the authority to enforce its laws beyond the territorial boundaries of the United States. Unless Congress has clearly expressed a contrary intent, however, federal statutory law is presumed to apply only within the territorial jurisdiction of the United States. *Foley Bros. v. Filardo*, 336 U.S. 281, 284–85, 69 S.Ct. 575, 577, 93 L.Ed. 680 (1949).

In *Foley Bros.*, the Court held that the Eight Hour Law did not apply extraterritorially, since "nothing in the Act itself . . . nor

---

1. The questions referred to the ICC included: (1) Whether the labor protective conditions adopted for exempt employees in the *Northern Lines* merger agreement apply to plaintiff, a Canadian citizen employed by defendant in Canada; (2) Whether such conditions have been breached by defendant as to plaintiff; and

(3) The damages, if any, to which plaintiff is entitled.

After concluding that it did not have jurisdiction to enforce the labor protective conditions, the ICC found it unnecessary to answer questions 2 and 3.

in the legislative history ... [led] to the belief that Congress entertained any intention other than the normal one." *Id.* at 285, 69 S.Ct. at 577. The Court explained:

> The canon of construction which teaches that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States, is a valid approach whereby unexpressed congressional intent may be ascertained. It is based on the assumption that Congress is primarily concerned with domestic conditions.

*Id.* (citation omitted).

Assuming Congress is primarily concerned with domestic conditions "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 248, 111 S.Ct. 1227, 1230, 113 L.Ed.2d 274 (1991). The presumption against extraterritoriality also reflects the deference of courts to Congress, which "alone has the facilities necessary to make fairly such an important policy decision." *Benz v. Compania Naviera Hidalgo, S.A.,* 353 U.S. 138, 147, 77 S.Ct. 699, 704, 1 L.Ed.2d 709 (1957).

The Supreme Court has required a "clear expression" of Congressional intent to apply legislation extraterritorially, making this presumption difficult to overcome. For example, in *Benz,* the Court considered whether the striking crew of a foreign vessel could invoke the protection of the Labor Management Relations Act while in United States waters. The Court denied extraterritorial effect to the Act, holding that "to run interference in such a delicate field of international relations there must be present the affirmative intention of the Congress *clearly expressed.*" *Id.* (emphasis added). Similarly, in *Foley Bros.,* the Court reasoned that Congress would not ordinarily apply domestic wage and hour provisions to aliens working abroad on United States public work projects and that the absence of a distinction in the Act between citizens and aliens was strong

evidence of congressional intent not to do so. The Court stated: "An intention so to regulate labor conditions which are the primary concern of a foreign country should not be attributed to Congress in the absence of a *clearly expressed* purpose." 336 U.S. at 286, 69 S.Ct. at 578 (emphasis added).

Van Blaricom argues that labor protective conditions adopted in compliance with 49 U.S.C. § 11347 extend to all "affected employees" regardless of citizenship or situs of work.

49 U.S.C. § 11347 provides in part:

> When a rail carrier is involved in a transaction for which approval is sought ... the Interstate Commerce Commission shall require the carrier to provide a fair arrangement at least as protective to the interest of employees who are affected by the transaction as the terms imposed under this section before February 5, 1976, and the terms established under section 405 of the Rail Passenger Service Act (45 U.S.C. 565).

49 U.S.C. § 11347.

While section 11347 does not specifically limit its application to United States citizens, it does not contain a "clear expression" of Congressional intent to apply the legislation extraterritorially. Additionally, the jurisdictional reach of the Interstate Commerce Act is governed by 49 U.S.C. § 10501, which provides in pertinent part:

> (a) Subject to this chapter and other law, the Interstate Commerce Commission has jurisdiction over transportation
>
> (2) to the extent such jurisdiction is not limited by subsection (b) of this section or the extent the transportation is *in the United States* and is between a place in—
>
> (G) the United States and a place in a foreign country.

49 U.S.C. § 10501(a)(2)(G) (emphasis added).[2]

---

**2.** The wording of the predecessor language to this provision was even more clearly limited to domestic transportation. It provided that the Act applied to transportation "from or to any place in the United States to or from a foreign country, *but only in so far as such transportation or transmission takes place within the United States.*" Transportation Act, 1920, § 400(1), ch. 91, 41 Stat. 474 (originally codified at 49 U.S.C. § 1(1) (emphasis added)).

The presumption against extraterritoriality, in conjunction with Congress' specific language in § 10501 limiting the jurisdiction of the ICC to transportation "in the United States," compels the conclusion that the ICC does not have the authority to enforce the labor protective conditions extraterritorially.

AFFIRMED.