29 F.3d 634
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Paul A. REDD, Jr., Plaintiff-Appellant,
v.
Charles MARSHALL, Defendant-Appellee.
 No. 93-15578.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 17, 1994.*
Decided June 22, 1994.
 
 Before: GOODWIN, PREGERSON, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Paul A. Redd, Jr. appeals pro se the District Court's grant of summary judgment for Appellee Charles Marshall, the warden of Pelican Bay State Prison, in Redd's 42 U.S.C. Sec. 1983 action. Redd's claim alleged violation of his constitutional rights when prison officials prevented Redd from consulting privately with his counsel before Redd's parole suitability hearing. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 BACKGROUND
 
 3
 Paul A. Redd, Jr. was convicted in 1976 of first degree murder while armed with a deadly weapon and with use of a firearm. Redd is currently serving a life sentence in a Security Housing Unit of the Pelican Bay State Prison in California.
 
 
 4
 Redd's fifth parole hearing was set for December 20, 1990. Pursuant to California Penal Code Sec. 3041.7, the Board of Prison Terms appointed Thomas Gerin to represent Redd at the parole hearing. Gerin first met with Redd on December 5, 1990, in a non-private booth where the two were separated by a glass partition and communicated by telephone.[1] Redd brought several large boxes containing his central file to the meeting because Redd believed there were many errors in his file. Gerin, however, was prevented from viewing the file.[2]
 
 
 5
 Gerin later wrote to the Hearing Coordinator of Pelican Bay State Prison, requesting a review of Redd's central file with Redd present. Pelican Bay administrators responded by scheduling an appointment for Gerin to review the central file with Redd on December 13, 1990. Following his arrival at the appointed time, Gerin waited an hour before the prison staff informed Gerin that there was no place for Gerin and Redd to review the file together. Gerin was then given one volume of Redd's central file, and permitted to meet with Redd in the non-private glass booth. Gerin ultimately ended the meeting prematurely, concluding that it was impossible to work effectively through the glass partition.[3]
 
 
 6
 Redd and Gerin faced an additional problem as well. The Board of Prison Terms will not reimburse an attorney for more than eight hours of work unless the legal unit is contacted before the expenditure of extra time. By the end of the December 13th meeting, Gerin had used almost seven hours of time[4] and reviewed only a portion of Redd's central file. Gerin declined further booth visits with Redd because Gerin concluded that the eighth hour would be as unproductive as the seven previous hours.
 
 
 7
 Gerin filed a written objection to the non-contact visitation policy with the Board of Prison Terms. At Redd's Board of Prison Terms hearing on December 20th, Gerin verbally informed the Board that he had been unable to prepare effectively for the hearing because he had been unable to meet adequately with Redd or fully review Redd's central file. The Board went ahead with the hearing, and denied Redd parole.
 
 
 8
 Redd filed a complaint with the District Court contending that the Pelican Bay's policy prevented Gerin from effectively representing Redd in his parole hearing. Specifically, Redd alleged deprivation of his Sixth and Fourteenth Amendment rights to effective assistance of counsel, his Fifth and Fourteenth Amendment rights to due process of law, and his Fourteenth Amendment right to meaningful access to the courts as enumerated in Bounds v. Smith, 430 U.S. 817, 821 (1977). Further, Redd alleged that Pelican Bay's policies violated California Penal Code Sec. 3041.7,[5] which created a liberty interest protected by the due process clause of the Constitution.
 
 
 9
 Redd's complaint further requested: (1) a writ of habeas corpus or relief under 42 U.S.C. Sec. 1983; (2) an order vacating the denial of parole and a new board of prison terms hearing; (3) an evidentiary hearing to determine if the prison officials were deliberately preventing Redd from having access to the prison law library and therefore forcing him to miss important court deadlines; (4) appointment of counsel for the instant petition; (5) an order removing all records of the December 20, 1990 hearing from Redd's file; and (6) reasonable legal fees.
 
 
 10
 On July 1, 1992, the District Court issued an order allowing Redd to proceed on the section 1983 claim alleging violation of his constitutional right to meaningful access to the courts based on the denial of contact attorney visits.[6] The District Court dismissed all other claims as lacking factual foundation, but granted leave to amend and advised Redd how to proceed to avoid summary judgment. Redd requested and was granted an extension of time to amend his complaint. Ultimately Redd did not file an amended complaint.
 
 
 11
 The State filed a motion to dismiss or in the alternative a motion for summary judgment on the section 1983 claim. The State contended that Redd had no constitutional right to counsel at a parole hearing. Further, the State contended that, even if Redd was entitled to counsel, he was not entitled to contact attorney visits because he was housed in a Security Housing Unit.
 
 
 12
 The District Court granted the State's summary judgment motion, finding that there was no procedural due process violation. Further, the District Court held that Pelican Bay's policies did not violate California Penal Code Sec. 3041.7, because the State had appointed an attorney who participated in Redd's parole hearing.
 
 ANALYSIS
 
 13
 A grant of summary judgment is reviewed de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Federal Deposit Ins. Corp. v. O'Melvany & Meyers, 969 F.2d 744, 747 (9th Cir.1992).
 
 
 14
 On appeal, Redd contends that the District Court erred in granting the State's motion for summary judgment because Pelican Bay's policy of denying contact attorney visits violated his constitutional right to meaningful access of the courts. Redd directs our attention to Bounds v. Smith, 430 U.S. 817, 822 (1977), which mandates that prison inmates are entitled to meaningful access to the courts under the Fourteenth Amendment. Under Bounds, this right requires prison authorities at the minimum to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or assistance from persons with legal training. Id. at 828.
 
 
 15
 The State argues that the District Court correctly granted summary judgment because Redd was not constitutionally entitled to be represented by counsel at his parole hearing.[7] Thus, the State contends, it follows that there can be no constitutional limitations on the circumstances surrounding a prisoner's meeting with an attorney.
 
 
 16
 We need not reach the question whether there is a due process right to meaningful access to a parole board hearing. In the present case, Redd was appointed counsel under the applicable California statute. Therefore, we limit our review to whether Pelican Bay's policy of non-contact attorney visitation for prisoners housed in the security housing unit violated Redd's constitutionally protected right to meaningful access of the courts. The touchstone for our inquiry is recognition that any infringement on a prisoner's constitutional rights must be reasonably related to legitimate penological interests, Turner v. Safley, 482 U.S. 78, 89 (1987).
 
 
 17
 Redd looks for support to Ching v. Lewis, 895 F.2d 608, 610 (9th Cir.1990), were we held that the right to meaningful access to the courts includes contact attorney visitation. This right, however, is not absolute. In Casey v. Lewis, 4 F.3d 1516 (9th Cir.1993), we recently considered the narrow question presented in the current case--whether prison policies that preclude attorney-client contact visits in prison security housing units are constitutional. Applying the four factor test of Turner v. Safley,[8] we found that because "the non-contact regulation is rationally related to legitimate penological interests," prison policies denying these visits are not unconstitutional. Id. at 1523. Further, we noted that "[c]ontact visitation with an attorney is merely one aspect of the broad and fundamental right of meaningful access to the courts." Id. The denial of non-contact attorney visits does not deny inmates meaningful access to the courts as envisioned in Bounds. Id. "Those rights are satisfied if prisoners are provided with 'adequate law libraries or adequate assistance from persons trained in the law.' " Id. at 1522 (citing Bounds, 430 U.S. at 828).
 
 
 18
 Applying Casey to the case at bar, we find that the District Court did not err in upholding Pelican Bay's non-contact visitation policy. Although in Ching we held that prisoners are entitled to contact attorney visits, our ruling in Casey made clear that this entitlement may be reasonably limited. As in Casey, we find that Pelican Bay Prison's policy of denying contact attorney visits for high security prisoners is not irrationally related to legitimate penological interests.
 
 
 19
 Moreover, we note that Pelican Bay Prison has provided acceptable alternative avenues which meet and surpass the standards set forth by the Supreme Court in Bounds and Greenholtz. First, although Redd was unable to meet privately with Gerin face to face, Redd was provided counsel under the applicable California statute, thus meeting the requirement of assistance from a person trained in the law. And, although the system of passing documents through a guard might be laborious, the prison's policies do not exclude the passing of documents between attorney and client. Further, if Gerin needed additional time to review Redd's file because of the non-contact visitation policy, Gerin could have requested permission from the Board of Prison Terms for the extra expenditure of time to meet with Redd to review the remainder of Redd's central file.
 
 
 20
 Finally, as suggested in Bounds, Redd also had access to the prison law library for additional legal help. The District Court recognized this fact in its July 1, 1992 order dismissing several of Redd's initial complaints, when it indicated what steps Redd needed to take to sufficiently amend his complaint. Further the District Court granted Redd's request for an extension of time to file an amended complaint because of Redd's later allegation that the limitations of the prison library hampered his ability to file his amended complaint timely.
 
 
 21
 In sum, we find that the District Court correctly granted the State's motion for summary judgment. We AFFIRM.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Redd's placement in the Security Housing Unit mandates non-contact attorney visits. The general purpose underlying this policy for high security inmates is prevention of escape, assault, hostage-taking, and the introduction of contraband. See, e.g., Casey v. Lewis, 4 F.3d 1516, 1523 (9th Cir.1993)
 
 
 [2]
 The facts indicate that there was no hole or slot in the non-private booth to allow for the private transfer of papers between attorney and client
 
 
 [3]
 The passing of documents between Redd and Gerin took several minutes because a guard had to carry the documents from one side of the booth to the other through several locked doors
 
 
 [4]
 There is nothing in the record indicating that Gerin requested additional time
 
 
 [5]
 Sec. 3041.7
 Parole release dates; prisoners under life sentence; hearings to set, postpone or rescind; counsel; prosecutor
 At any hearing for the purpose of setting, postponing, or rescinding a parole release date of a prisoner under a life sentence, such prisoner shall be entitled to be represented by counsel.... The Board of Prison Terms shall provide by rule for the invitation of the prosecutor of the county from which the prisoner was committed, or his representative, to represent the interests of the people at any such hearing. The Board of Prison Terms shall notify the prosecutor at least 30 days prior to the date of the hearing.
 
 
 [6]
 As the District Court stated:
 This court construes Mr. Redd's entire complaint as a section 1983 claim, rather a habeas petition, for two reasons. First, Mr. Redd is seeking not release but a new parole hearing. Second, although his claim discusses effective assistance of counsel, Mr. Redd does not allege any incompetency on his attorney's part. Rather, his claim seems to be that prison policies violated his due process right of meaningful access to the courts, an allegation properly brought pursuant to 42 U.S.C. Sec. 1983.
 District Court Order, July 1, 1992.
 
 
 [7]
 In Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 15 (1979), the Supreme Court held that an inmate's right to due process was satisfied in a parole hearing where the state "affords an opportunity to be heard, and when parole is denied it informs the inmate in what respect he falls short of qualifying for parole." Thus, there does not appear to be a constitutionally recognized right to counsel at parole hearings
 
 
 [8]
 Turner identifies four factors relevant in determining the reasonableness of prison policies: (1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest presented to justify it; (2) whether there are alternative means of exercising the right; (3) the impact that accommodation of the right will have on prison guards, or other inmates, or on the allocation of prison resources; and (4) whether the regulation or policy is an "exaggerated response" to prison concerns. 482 U.S. at 89-90