RED MOUNTAIN MACHINERY COM-
PANY, an Arizona corporation,
Plaintiff–Appellant,

v.

GRACE INVESTMENT COMPANY, an
Arizona corporation; Canadian Imperial
Bank of Commerce, a foreign corpora-
tion, Defendants–Appellees.

No. 92–16825.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 1994.

Decided July 18, 1994.

Lawrence C. Wright, Mesa, AZ, for plain-
tiff-appellant.

G. Gregory Eaglebuger, The Eagleburger
Group, Phoenix, AZ, for defendants-appel-
lees.

Before: FLETCHER, KOZINSKI and
TROTT, Circuit Judges.

FLETCHER, Circuit Judge:

Red Mountain Machinery Company ("Red
Mountain") appeals the district court's order
granting summary judgment in favor of
Grace Investment Co. ("Grace") and the Ca-
nadian Imperial Bank ("the Bank") in Red
Mountain's action seeking foreclosure of a
leasehold interest in real property leased by
Grace from the Yavapai–Prescott Indian
Tribe ("the Tribe"). The district court held
that the Arizona mechanics' lien law was
preempted by federal law. We reverse and
remand.

## BACKGROUND

The facts are undisputed. Grace is an Arizona corporation engaged in real estate investment and development. By a lease dated October 7, 1988, Grace leased tribal lands from the Yavapai–Prescott Indian Tribe to construct and operate the Frontier Village shopping center. The Yavapai–Prescott Indian Tribe is a federally recognized and protected Indian Tribe. The lease was entered into in compliance with federal laws governing the leasing of Indian lands. *See* 25 U.S.C. § 415(a) (Supp. IV 1992); 25 C.F.R. pt. 162 (1993). The lease has a term of sixty-five years and contains an option to renew for an additional twenty-year period. The lease was approved by the Secretary of the Interior, through the Acting Phoenix Area Director of the Bureau of Indian Affairs.

The purpose of the lease was to facilitate the development of multiple-use facilities on tribal land, including retail, office, lodging, medical, residential, and recreational buildings. The lease granted Grace continued possession of the property for the term of the lease. Grace was responsible for paying the cost of all construction on the Frontier Village project. In addition, under both federal regulations and the terms of the lease, Grace was required to provide security to guarantee completion of the project and payment in full of the claims of those who performed work on or provided materials to the project. In compliance with this requirement, Grace entered into a construction loan agreement with the Bank (the "Building Loan Agreement") under which the Bank agreed to advance an amount sufficient to cover the entire cost of construction. The Building Loan Agreement provided that all funds lent by the Bank were to be used only to pay the costs of construction and direct expenses of project development. As a condition for each construction advance, Grace was required to present evidence that it had paid for all work

and materials previously supplied to the project. The Building Loan Agreement provided that Grace would be in default of the Agreement if Grace failed to discharge any mechanics' lien that might arise on the project.

After the lease was executed, Grace began construction of the Frontier Village Center. In February 1991, Grace entered into a subcontract with Tempe Trenching Company ("Tempe") for the construction of water and sewer systems. In April 1991, Tempe contracted with Red Mountain to rent equipment necessary for Tempe to carry out its subcontract with Grace.

At the conclusion of its work on the Frontier Village project, Tempe owed Red Mountain $55,872.14 in unpaid rental charges. Without paying these charges, Tempe went out of business and subsequently filed a "no asset" Chapter 7 bankruptcy. Tempe is not a party to this action.

On September 11, 1991, Red Mountain recorded a Notice and Claim of Lien pursuant to Arizona's mechanics' lien law. Ariz.Rev. Stat.Ann. § 33–981 (1990).[1] It claimed $55,-872.14 and listed the Tribe as the owner of the property and Grace Investment Company as lessee. The legal description of the real property was attached to the notice. The lien was claimed on the real property and improvements.

On October 22, 1991, Red Mountain filed this action in state superior court seeking to enforce the mechanics' lien against Grace's leasehold interest in the real property leased by Grace from the Tribe. The complaint named Grace and the Bank as defendants. The Bank was joined as a defendant because it holds a mortgage on Grace's leasehold estate. The complaint did not seek to foreclose upon the underlying real estate, nor did it name the Tribe as a defendant.

---

1. The Arizona law provides, in relevant part:
   A. ... [E]very person who labors or furnishes professional services, materials, machinery, fixtures or tools in the construction, alteration or repair of any building, or other structure or improvement whatever, shall have a lien on such building, structure or improvement for the work or labor done or professional services, materials, machinery, fixtures or tools furnished, whether the work was done or articles furnished at the instance of the owner of the building, structure or improvement, or his agent....

   Ariz.Rev.Stat.Ann. § 33–981 (1990).

This case was properly removed to federal court pursuant to 28 U.S.C. § 1441. On August 24, 1992, the district court entered summary judgment for Grace, ruling that the Arizona lien law is preempted by federal statutory and regulatory control of leases involving Indian land. Red Mountain filed a motion to amend the judgment on September 4, 1992. This motion was denied on September 11, 1992. Red Mountain timely appealed to this court.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction over this claim pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

A grant of summary judgment is reviewed de novo. *Jones v. Union Pac. R.R.*, 968 F.2d 937, 940 (9th Cir.1992); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 629 (9th Cir.1987). Because there is no dispute with respect to the underlying facts, we must determine whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

## DISCUSSION

This case raises the question of whether a state law of general applicability, the Arizona mechanics' lien statute, may be applied to allow foreclosure of a leasehold interest in tribal land held by a non-Indian. On a number of occasions the Supreme Court has addressed whether state laws apply to regulate non-Indians conducting business on Indian reservations. The Court has repeatedly emphasized that "no rigid rule" governs such an exercise of state authority. *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665 (1980). Instead, the Court has stated that we must assess on a case-by-case basis "two independent but related barriers to the assertion of

state regulatory authority over tribal reservations": (1) federal preemption, and (2) tribal self-government. *Id.* at 142–43, 100 S.Ct. at 2583. Either barrier standing alone can be "a sufficient basis for holding state law inapplicable to activity undertaken on the reservation." *Id.* at 143, 100 S.Ct. at 2583.

■ At the outset, the parties disagree about the proper standard to apply to determine if the Arizona mechanics' lien law is preempted. Red Mountain argues that the principles of federal preemption in the area of Indian law are *sui generis* and that traditional standards of preemption do not apply.[2] In contrast, appellees argue that federal preemption is appropriate under either the traditional standards for federal preemption or under those standards that have developed in Indian law cases.

■ Interesting as this dialogue may be, we need not enter the fray. Although we ordinarily would apply a fact-specific balancing test among federal, state, and tribal interests to determine if a state law applies in a given case, *see White Mountain Apache Tribe*, 448 U.S. 136, 100 S.Ct. 2578, in this case we conclude that we need not engage in such a balancing test because the Secretary, pursuant to his statutory authority, has already engaged in such an analysis and has authorized the application of the mechanics' lien law under the terms of the lease between Grace and the Tribe.

Leases of tribal land are governed by a complex federal statutory and regulatory scheme. Federal law permits the Yavapai-Prescott Tribe to enter into long-term leases of their land, and to renew those leases once, as prescribed, for a number of years. 25 U.S.C. § 415(a) (Supp. IV 1992). All leases and renewals must be made according to detailed regulations promulgated by the Secretary of the Interior, and each lease or renewal requires the Secretary's approval. *Id.* Pursuant to this statutory grant of authority, the Secretary has promulgated de-

---

**2.** Outside the specific area of Indian law, federal law is held to preempt state law when (1) federal law expressly states that it preempts state law; (2) the federal scheme of regulation is so pervasive that it is reasonable to infer that Congress intended preemption; or (3) state law conflicts

with federal law or stands as an obstacle to the accomplishment of Congress's full purposes. *See Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 603–07, 111 S.Ct. 2476, 2481–82, 115 L.Ed.2d 532 (1991).

tailed regulations governing the leasing of tribal lands. 25 C.F.R. pt. 162 (1993).

The extensive regulatory scheme governing leases of tribal land explicitly permits leases of tribal land to be encumbered if the lease contains a provision authorizing such an encumbrance. 25 C.F.R. § 162.12(a) & (c) (1993).[3] In accordance with this regulatory provision, the lease between Grace and the Tribe, which was approved by the Secretary, specifically adopts the Arizona mechanics' lien provision by providing that Arizona law would apply to controversies related to the Frontier Village project:

> Lessor agrees that this lease ... and any encumbrances thereof, and any subleases, assignments or other contracted agreements with respect thereto ... shall be construed in accordance with the substantive law of the State of Arizona....

Lease at 42 (emphasis added). The lease also provides that disputes between Grace and other non-Indian parties that might affect Grace's leasehold interest may be subject to state law:

> Lessor agrees that any encumbrancer of Lessee's interest or that of any sublessee or assignee and the rights of any encumbrancer with respect thereto (including, without limitation, any rights dealing with any sale, foreclosure or other enforcement of (or under) any security instrument, or executed and delivered in connection therewith) may be governed by the laws of the State of Arizona or, to the extent applicable, the laws of the United States.

Lease at 43–44 (emphasis added).

■ As noted above, the substantive law of Arizona confers upon parties such as Red

Mountain that supply materials to the construction projects the right to impose and enforce a mechanics' lien against a lessee's interest in the underlying property. Ariz. Rev.Stat.Ann. § 33–981 (1990); *Demund Lumber Co. v. Franke*, 40 Ariz. 461, 14 P.2d 256 (1932) (noting that where an owner of property has leased land to a developer, a party that furnishes material to the lessee may have a lien only against the lessee unless the lessee is an agent of the owner). We conclude that by approving the lease that contained these provisions, the Secretary contemplated and authorized enforcement of mechanics' liens by foreclosure against the leasehold pursuant to Arizona law.

In addition to the language in the lease, federal regulations require a lessee of tribal lands to provide assurances that the claims of subcontractors and suppliers who contribute their labor and materials to a development project on such lands will be paid. *See* 25 C.F.R. § 162.5(c) (1993). In this case the lease was the instrument that satisfied this requirement by requiring Grace to guarantee completion of the project and payment of the workers and materialmen by providing one of four types of security. One option available to Grace was to deposit cash in escrow "until the period fixed by law for the filing of all mechanics' or materialmen's liens on such improvement shall have expired." Lease at 15. This language further substantiates our conclusion that the Secretary recognized that mechanics' liens could be filed against the leasehold and sought to guard against the

---

3.  Section 162.12 provides, in relevant part:

    (a) Except as provided in paragraphs (b), (c), and (d) of this section, a sublease, assignment, amendment or encumbrance of any lease or permit issued under this part may be made only with the approval of the Secretary and the written consent of all parties to such lease or permit....
    
    ....
    
    (c) *With the consent of the Secretary, the lease may contain provisions authorizing the lessee to encumber his leasehold interest in the premises for the purpose of borrowing capital for the development and improvement of the leased premises. The encumbrance instrument[ ] must be approved by the Secretary.* If a

sale or foreclosure under the approved encumbrance occurs and the encumbrancer is the purchaser, he may assign the leasehold without the approval of the Secretary or the consent of the other parties to the lease, provided, however, that the assignee accepts and agrees in writing to be bound by all the terms and conditions of the lease. If the purchaser is a party other than the encumbrancer, approval by the Secretary of any assignment will be required, and such purchaser will be bound by the terms of the lease and will assume in writing all the obligations thereunder.

25 C.F.R. § 162.12(a) & (c) (1993) (emphasis added).

consequences.[4]

■ In summary, we conclude that the federal government has already balanced the federal interests, state interests, and tribal interests. Although it is not our job to weigh the federal, state, and tribal interests in a case such as this where the Secretary has already done so, we emphasize that application of the mechanics' lien provision is consistent with a strong federal interest in promoting economic development on Indian lands. Ensuring that labor and materialmen and lenders who make possible development projects on tribal lands can take security to enable them to be paid promotes that development. Congress first authorized the long-term leasing of Indian lands in order to bring Indians much needed income that they could not receive under short-term leases. 25 U.S.C. § 415(a); H.R.Rep. No. 1093, 84th Cong., 1st Sess., U.S.Code Cong. & Admin.News 2691, 2692 (1955).[5] Federal regulations promote this policy by ensuring that suppliers and contractors who contribute to the development of tribal lands are paid. 25 C.F.R. § 162.5(c) (1993).

We also emphasize that enforcement of the mechanics' lien in this case does not harm any economic interest of the Tribe or interfere with Tribal property interests or any interest in self-government. In entering the lease agreement, the Tribe conveyed its possessory interest in the land for a designated period of time, retaining a reversionary interest in the land. The mechanics' lien applies only to Grace's leasehold interest in the property, and not to the underlying property itself. See Demund Lumber, 14 P.2d 256. Because Red Mountain's claim may be asserted only against Grace, and because it does not affect the Tribe's reversionary interest in its property, no tribal interest will be harmed.[6]

Red Mountain requests an award of attorneys' fees pursuant to Ariz.Rev.Stat.Ann. § 33–998(B), which permits an award of reasonable attorneys' fees to a successful party in an action to enforce a lien.[7] Appellees argue that § 33–998(B) does not support an award of attorneys' fees in this case because the statute was not enacted until after Red Mountain filed its 'complaint and did not become effective until after the district court dismissed the action.

We do not decide whether attorneys' fees may be awarded under § 33–998(B) in cases that were pending at the time this provision became effective because this issue is not properly before us. The only issue on appeal is whether federal law preempts the application of the Arizona mechanics' lien provision to the leasehold interest held by Grace. Whether the lien is valid and may be foreclosed are questions for the district court on remand. After the district court decides these issues, it can then determine whether Red Mountain is a successful party and whether it is appropriate to award reason-

---

4. We also note that the Building Loan Agreement between Grace and the Bank specifically contemplates that mechanics' liens might be filed against Grace's leasehold interest in the Tribe's property. The Building Loan Agreement provides that as a condition to receiving each construction advance from the Bank, Grace was required to provide evidence that it had paid for all work and materials previously supplied to the project. The Agreement further provided that Grace would be in default under the Agreement if it failed to discharge any liens that might arise on the project.

5. Some of the benefits that the Tribe receives from its lease with Grace include substantial rental income, increased employment opportunities for members of the Tribe at the Frontier Village Center, the development of facilities on Tribal land that enhance the quality of life, and the return to the Tribe of possession of the property with all improvements when the term of the lease expires.

6. We also note that requiring Grace to pay Red Mountain will not affect the annual rental income that the Tribe receives under the lease. This rental income from the lease is based in part on sales revenue from the leased property, and is calculated by adding to an annual stipulated base rent a percentage of the portion of Grace's gross income that exceeds the annual base rent. Costs of construction, which would include the cost of paying Red Mountain's claim, must be paid by Grace and are not included in the calculation of gross income.

7. Section 33–998(B) provides:

In any action to enforce a lien granted under this article, the court may award the successful party reasonable attorney fees.

Ariz.Rev.Stat.Ann. § 33–998(B) (Supp.1993).

able attorneys' fees under § 33–998(B) under the facts of this case.

### CONCLUSION

We hold that federal law does not preempt application of the Arizona mechanics' lien provision to the leasehold interest held by Grace. The district court's order granting summary judgment for Grace is RE-VERSED and this case is REMANDED for further proceedings consistent with this opinion.